IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| **AUDREY DICKSON-WALKER,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 3:24-cv-322 |
| § | |
| **STONEY CLEMENT, and** § | |
| **RAY NOLAN,** § | |
| § | |
| *Defendants.* § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

COMES NOW, Audrey Dickson-Walker, complaining of Stoney Clement and Ray Nolan,

and for causes of action will respectfully show unto the Court as follows:

"[A] Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation."

*Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

## SUMMARY

On November 10, 2022, Galveston County Task Force erroneously executed a search warrant at Audrey Dickson-Walker's apartment instead of the apartment next door. Mrs. Dickson-Walker lived in apartment <u>315</u>. The subject of the search warrant, Emanuel Jordan, lived in apartment <u>316</u>. Detective Stoney Clement of the Galveston Police Department shockingly wrote in his application for the search warrant that he <u>observed</u> Emanuel Jordan, "entering and exiting [Mrs. Dickson-Walker's apartment] on a regular basis." However, Emanuel Jordan has never been inside of Mrs. Dickson-Walker's apartment – accordingly, Detective Clement never saw Emanuel Jordan "entering and exiting" her apartment. Further, Detective Clement wrote in his application for the search warrant that at two different controlled buys in November of 2022, he "observed the CI leave 7302 Heards Lane Apartment 315, Galveston, TX." This is patently false, as Emanuel Jordan lived at apartment 316 and has never even been inside of Mrs. Dickson-Walker's apartment.

Mrs. Dickson-Walker was 71 years old, alone in her apartment, asleep, and wearing only her night gown when the officers broke in her door, entered her apartment, and pointed AR-15 rifles at her demanding she leave her apartment. Mrs. Dickson-Walker complied with the order, but Defendant Ray Nolan still grabbed her by the arm and yanked it so forcefully that it caused her serious injury and pain. Mrs. Dickson-Walker brings this suit for violation of her constitutional rights under the Fourth Amendment to the United States Constitution to be free from unreasonable searches and excessive force.

## I.
## PARTIES

1. Plaintiff Audrey Dickson-Walker is an individual residing in Galveston County, Texas.

2. Defendant Stoney Clement is an individual residing in Galveston County, Texas, and at all times relevant to this Complaint was a law enforcement officer with the Galveston Police Department, and may be served at his place of employment at the Galveston Police Department located at 601 54th Street, Galveston, TX 77591, or wherever he may be found. Defendant Clement is being sued in his individual capacity.

3. Defendant Ray Norman is an individual residing in Galveston County, Texas, and at all times relevant to this Complaint was a law enforcement officer with the Galveston County Sheriff's Office, and may be served at his place of employment at the Galveston County Sheriff's Office located at 601 54th Street, Galveston, TX 77591, or wherever he may be found. Defendant Nolan is being sued in his individual capacity.

## II.
## JURISDICTION AND VENUE

4. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343 since Plaintiff is suing for relief under 42 U.S.C. § 1983.

5. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 because the Defendants reside in the Southern District of Texas and all of the causes of action accrued in the Southern District of Texas.

## III.
## FACTS AND ALLEGATIONS

6. On July 30, 2022, Plaintiff Audrey Dickson-Walker was 71 years old and suffered cardiac arrest.

7. She woke up in the hospital where she required continued medical attention.

8. On November 10, 2022, she was home still recovering after her daughter had just gone back to California from taking care of her.

9. That night, she fell asleep on her sofa watching Dateline.

10. She woke up to a loud bang on her door.

11. The police then forcefully entered her apartment by breaching her door.

12. She did not hear the police announce who they were at first but instead saw someone knock a hole into her door.

13. The police, dressed in swat gear and carrying AR-15 assault rifles, then forced the door open and entered her apartment.

14. Mrs. Dickson-Walker had multiple guns pointed at her head as police were yelling at her to leave her apartment with her hands up.

15. She complied with their orders and walked to her door.

16. However, when she got to door Defendant Ray Nolan yanked her left arm pulling her outside.

17. When Defendant Nolan yanked her by the arm, he could see that she was an elderly woman in only a nightgown who was in fear for her life, she was complying with orders to exit her apartment by walking toward the door, and she was unarmed.

18. Defendant Nolan was executing a search warrant for a male suspected of selling drugs; however, Defendant Nolan could clearly see that Mrs. Dickson-Walker was not the male they were looking for to arrest.

19. As Mrs. Dickson-Walker did not present any threat, clearly did not match the description of the person in the search warrant, and was complying with the order to leave her apartment, there was absolutely no need to use force against her – let alone the amount and type of force that was used by Defendant Nolan.

20. The left side of Mrs. Dickson-Walker's body where Defendant Nolan yanked her is where her defibrillator and pacemaker had just been implanted.

21. Doctors had explained to her to be careful with it and avoid lifting heavy objects.

22. Mrs. Dickson-Walker required x-rays following this traumatic event.

23. Thankfully, the x-rays showed her devices were still intact.

24. However, her arm continued to hurt for months.

25. After being forced outside in her night gown, officers handcuffed her with officers surrounding her.

26. The officers were yelling a name she didn't recognize.

27. It turned out to be her neighbor, Emanuel Jordan.

28. Mrs. Dickson-Walker lived in apartment **315**.

29. The subject of the search warrant, Emanuel Jordan, lived in apartment **316**.

30. It was only after the apartment manager came over that they released her handcuffs.

31. A second search warrant was then obtained for apartment 316 where Emanuel Jordan was found and arrested.

32. Officers were in Mrs. Dickson-Walker's apartment for hours.

33. Following this traumatic event that left her mentally shaken and physically injured, Mrs. Dickson-Walker received a letter from Galveston County stating the execution of a warrant at her home was in error.

34. The search warrant was executed at Mrs. Dickson-Walker's apartment because Defendant Detective Stoney Clement of the Galveston Police Department included false statements in his affidavit for the search warrant that he presented to the judge.

35. Defendant Clement was the affiant of the Affidavit for Search Warrant for Mrs. Dickson-Walker's residence located at 7302 Heards Lane Apartment 315, Galveston, Galveston County, TX.

36. Defendant Clement signed and swore to the truth of the information in the Affidavit for Search Warrant at Mrs. Dickson-Walker's residence.

37. Defendant Clement presented the sworn Affidavit for Search Warrant at Mrs. Dickson-Walker's residence on November 9, 2022 to Juge Kerry Neves of the 10th District Court of Galveston County, Texas.

38. Based off Defendant Clement's sworn statements in the Affidavit for Search Warrant at Mrs. Dickson-Walker's residence, Judge Neves signed a search warrant for Mrs. Dickson-Walker's residence.

39. This was the search warrant that was executed on November 10, 2022, which resulted in the wrongful search of Mrs. Dickson-Walker's residence and her injuries from the excessive force used by Defendant Nolan.

40. In the Affidavit for Search Warrant signed, sworn, and presented by Defendant Clement for Mrs. Dickson-Walker's residence, Defendant Clement stated,

> "On multiple occasions, Affiant[1] observed Emanuel Jordan on location at 7302 Heards Lane Apt 315, Galveston, Galveston County, TX. **Affiant also observed Jordan to be entering and exiting the above listed residence on a regular basis** which led Affiant to believe Jordan lived on location." (emphasis added).

41. In the Affidavit for Search Warrant signed, sworn, and presented by Defendant Clement for Mrs. Dickson-Walker's residence, Defendant Clement stated regarding a controlled buy in November 2022,

---

[1] Throughout the Affidavit for Search Warrant, the word "Affiant" refers to Defenant Clement.

> "The CI was directed to travel to Jordan's residence at 7302 Heards Lane Apartment 315, Galveston, Galveston County, TX and purchase a predetermined amount of MDMA from Emanuel Jordan. Affiant followed the CI from the secure briefing location to 7302 Heards Lane Apartment 315, Galveston, TX. Affiant observed the CI arrive on location at the previously mentioned address and meet Jordan. Affiant then observed a hand-to-hand exchange between Jordan and the CI. After a short period of time **Affiant observed the CI leave 7302 Heards Lane Apartment 315, Galveston, TX**. Affiant followed the CI from 7302 Heards Lane Apartment 315, and met the CI at the secure briefing location." (emphasis added).

42. In the Affidavit for Search Warrant signed, sworn, and presented by Defendant Clement for Mrs. Dickson-Walker's residence, Defendant Clement stated regarding a controlled buy in November 2022 within the 48 hours before the Affidavit was presented,

> "The CI was directed, by Affiant to travel to Jordan's residence at 7302 Heards Lane Apartment 315, Galveston, Galveston County, TX and purchase a predetermined amount of MDMA from Emanuel Jordan. Alliant followed the CI from the secure briefing location to 7302 Heards Lane Apartment 315, Galveston, TX. Alliant observed the CI arrive on location at the previously mentioned address and meet Jordan. **Affiant then observed the CI to enter Jordan's residence. After a short period of time, Affiant observed the CI leave 7302 Heards Lane Apartment 315, Galveston, TX**. Affiant followed the CI from 7302 Heards Lane Apartment 315, and met the CI at the secure briefing location." (emphasis added).

43. These statements are completely false – as Emanuel Jordan has never even been inside of Mrs. Dickson-Walker's apartment, let alone entered and exited on a regular basis.

44. No controlled buys occurred at Mrs. Dickson-Walker's apartment.

45. It is impossible that Defendant Clement observed Emanuel Jordan entering and exiting Apartment 315, because that never occurred.

46. However, Defendant Clement shockingly swore to the court that he observed this happen, not once but "on a regular basis."

47. It is impossible that Defendant Clement observed a confidential informant ("CI") enter or leave Apartment 315 during the process of a controlled buy, because that never occurred.

48. However, Defendant Clement swore to the court that he observed this happen, not once but twice.

49. But for these statements, Judge Neves would not have signed the search warrant for Apartment 315 and Mrs. Dickson-Walker's residence would not have been searched, she would not have been woken up to her door being broken in, she would not have multiple rifles pointed in her face, she would not have been forced outside into public in her night gown, and she would not have been injured by Defendant Nolan.

50. At all times relevant to this lawsuit, Defendants Clement and Nolan were acting under color of law.

## IV.
## CAUSE OF ACTION

### Count One

**Unreasonable Search of Mrs. Dickson-Walker's Residence**
**Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983**
**Against Defendant Clement**

51. The Supreme Court held, in the context of a search warrant, that an officer may violate the Fourth Amendment when, in connection with an application for a warrant, he "makes a false statement knowingly and intentionally, or with reckless disregard for the truth" that results in a warrant being issued without probable cause. *Franks v. Delaware*, 438 U.S. 154, 155 (1978).

52. The Fifth Circuit has also found that a Fourth Amendment violation may be established where an officer intentionally, or with reckless disregard for the truth, includes a false statement in a warrant application. *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006).

53. "To defeat the affirmative defense of qualified immunity as to his Fourth Amendment-based false arrest claim under § 1983, [Plaintiff] Jones must satisfy the following elements: (1) the affiant included false information in or omitted material information from the

affidavit and that [he] did so knowingly or with a reckless disregard of the truth; (2) the reconstructed affidavit (excluding the false information and including the omitted information) would not establish probable cause to arrest; and (3) to overcome qualified immunity, Plaintiff [ ] must show "that [no] reasonably competent officer possessing the information that the [affiant] had at the time [he] swore [his] affidavit could have concluded that a warrant should issue." *Jones v. Perez*, No. 3:16-CV-2835-D, 2017 WL 4238700, at *6 (N.D. Tex. Sept. 25, 2017), aff'd, 790 F. App'x 576 (5th Cir. 2019); quoting *Freeman v. Cnty of Bexar*, 210 F.3d 550, 553 (5th Cir. 2000).

54. "To determine whether facts omitted from a warrant affidavit are material to the determination of probable cause, courts ordinarily insert the omitted facts into the affidavit and ask whether the reconstructed affidavit would still support a finding of probable cause." *Kohler*, 470 F.3d at 1113.

55. Probable cause cannot exist where the affidavit supporting a warrant contains material false statements or omissions that are deliberate falsehoods or evidence a reckless disregard for the truth. *DeLeon v. City of Dallas*, 345 Fed.Appx. 21, 23 (5th Cir. 2009).

56. If the officer, acting intentionally or with reckless disregard for the truth, fails to provide a magistrate with information that was critical to a finding of probable cause, then the officer may be held liable. *Hale v. Fish*, 899 F.2d 390, 400 (5th Cir.1990).

57. The Fifth Circuit has explained that "[i]f the facts omitted from an affidavit are "clearly critical" to a finding of probable cause, then recklessness may be inferred from the proof of the omission itself." *Hale*, 899 F.2d at 400.

58. Here, Defendant Clement intentionally included false information; to wit, that he observed Emanuel Jordan entering and exiting Apartment 315 on a regular basis and that he observed his confidential informant enter Apartment 315 to conduct a controlled buy – twice.

59. Defendant Clement knows this information was false at the time he swore to it because it was impossible that he saw these things since they did not occur.

60. Alternatively, Defendant Clement recklessly disregarded the truth when he included false information; to wit, that he observed Emanuel Jordan entering and exiting Apartment 315 on a regular basis and that he observed his confidential informant enter Apartment 315 to conduct a controlled buy – twice.

61. It was reckless to not know which apartment Emanuel Jordan resided or which apartment the controlled buys occurred inside of when it was readily available information.

62. Defendant Clement omitting that Emanuel Jordan lived in Apartment 316 or that Defendant Clement didn't actually observe what apartment Emanuel Jordan and the confidential informant entered were "clearly critical" to the finding of probable cause; thus, recklessness may be inferred. *Hale*, 899 F.2d at 400.

63. Following this traumatic event that left her mentally shaken and physically injured, Mrs. Dickson-Walker received a letter from Galveston County stating the execution of a warrant at her home was in error.

64. As a result of Defendant Clement violating Mrs. Dickson-Walker's constitutional rights, as outlined in this lawsuit and this Count, Mrs. Dickson-Walker suffered injuries and damages in the form of emotional distress, torment, and mental anguish, deprivations of her liberty, and physical injuries when Defendant Nolan used excessive force on her executing the warrant.

## Count Two

### Excessive Force
### Violation of the Fourth Amendment Pursuant to 42 U.S.C. § 1983
### Against Defendant Nolan

65. Mrs. Dickson-Walker repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

66. Acting under the color of law, Defendant Nolan deprived Mrs. Dickson-Walker of the rights and privileges secured to her by the Fourth Amendment to the United States Constitution and by other laws of the United States to be free from illegal and unreasonable seizures by the use of force.

67. Mrs. Dickson-Walker brings this cause of action pursuant to 42. U.S.C. § 1983.

68. The amount of force used by Defendant Nolan against the 71-year-old Mrs. Dickson-Walker as described above, specifically but not limited to when Defendant forcibly yanked her left arm causing immense pain and injury without warning or justification despite Plaintiff being compliant, defenseless, nonthreatening, and non-resistant, was objectively unreasonable under the circumstances and inflicted unnecessary injury, pain and suffering upon Plaintiff.

69. A seizure is unreasonable if it results in (a) an injury, (b) that resulted directly and only from a use of force that was clearly excessive, and (c) the excessiveness was clearly unreasonable.

70. Fifth Circuit case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced. *Darden v. City of Fort Worth, Texas,* 880 F.3d 722, 731 (5th Cir.)

71. Plaintiff was not suspected of committing a felony offense immediately prior to and at the time when Defendant Nolan forcibly yanked her left arm causing immense pain and injury without warning or justification despite Plaintiff being compliant, defenseless, nonthreatening, and non-resistant, as the warrant was for a male – not a 71 year old woman.

72. Plaintiff was not threatening any officer or other person immediately prior to and at the time when Defendant Nolan forcibly yanked her left arm causing immense pain and injury without warning or justification despite Plaintiff being compliant, defenseless, nonthreatening, and non-resistant, as Plaintiff was in fear for her life as officers had forcefully entered into her apartment with rifles while she was alone in her nightgown.

73. Plaintiff was not attempting to evade arrest immediately prior to and at the time when Defendant Nolan forcibly yanked her left arm causing immense pain and injury without warning or justification despite Plaintiff being compliant, defenseless, nonthreatening, and non-resistant, as Plaintiff was in fear for her life as officers had forcefully entered into her apartment with rifles while she was alone in her nightgown.

74. Plaintiff was not resisting arrest immediately prior to and at the time when Defendant Nolan forcibly yanked her left arm causing immense pain and injury without warning or justification despite Plaintiff being compliant, defenseless, nonthreatening, and non-resistant, as Plaintiff was in fear for her life as officers had forcefully entered into her apartment with rifles while she was alone in her nightgown.

75. Plaintiff was not holding a weapon and Defendant Nolan was not aware of any facts that would lead him to believe Plaintiff was armed with a weapon as Plaintiff was in fear for her life as officers had forcefully entered into her apartment with rifles while she was alone in her nightgown.

76. A reasonable officer would know that the use of force is <u>clearly excessive</u> when engaging with citizens such as Plaintiff, who was a 71 year old woman in her nightgown, not threatening any officer or other person, had committed no crime, was not attempting to evade or resist arrest, was not holding a weapon, was compliant with Defendant Nolan's orders, and who the use of force was not warranted.

77. A reasonable officer would know that the use of force is <u>clearly unreasonable</u> when engaging with citizens such as Plaintiff, who was a 71 year old woman in her nightgown, who was not threatening any officer or other person, had committed no crime, was not attempting to evade or resist arrest, was not holding a weapon, was compliant with Defendant Nolan's orders, and who the use of force was not warranted.

78. As a direct result of the force used against her by Defendant Nolan, Plaintiff has suffered physical injury, pain, and mental anguish for which she sues herein.

79. These injuries were not caused by any other means.

80. When Defendant Nolan used excessive force against Mrs. Dickson-Walker, Defendant Nolan was acting under color of law, as he was executing a warrant at her apartment.

## V.
## DAMAGES

81. Mrs. Dickson-Walker repeats and re-alleges each and every allegation contained in the above paragraphs as if fully repeated herein.

82. Mrs. Dickson-Walker's injuries were a foreseeable event. Those injuries were directly and proximately caused by Defendant Clement's false statements in the Affidavit for Search Warrant and Defendant Nolan's use of excessive and unreasonable force. As a result, Mrs. Dickson-Walker is entitled to recover all actual damages allowed by law.

83. Mrs. Dickson-Walker contends the Defendants' conduct constitutes malice, evil intent, or reckless or callous indifference to Mrs. Dickson-Walker's constitutionally protected rights. Thus, Mrs. Dickson-Walker is entitled to punitive damages.

84. As a direct and proximate result of the occurrence which made the basis of this lawsuit, Mrs. Dickson-Walker was forced to suffer:

   a. Physical pain and suffering;
   b. Emotional distress, torment, and mental anguish, and
   c. Deprivation of liberties.

85. Pursuant to 42 U.S.C. § 1983 and § 1988, Mrs. Dickson-Walker seeks to recover and requests the award of punitive damages, reasonable attorney's fees, and costs of court.

## VI.
## ATTORNEY'S FEES

86. If Mrs. Dickson-Walker prevails in this action, by settlement or otherwise, Mrs. Dickson-Walker is entitled to and hereby demands attorney's fees under 42 U.S.C. § 1988.

## VII.
## JURY REQUEST

87. Plaintiff respectfully requests a jury trial.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Audrey Dickson-Walker, prays that judgment be rendered against Defendants Stoney Clement and Ray Nolan for an amount in excess of the jurisdictional minimum of this Court. Mrs. Dickson-Walker further prays for all other relief, both legal and equitable, to which she may show herself justly entitled.

Respectfully submitted,

*/s/ James P. Roberts*
JAMES P. ROBERTS,
Texas Bar No. 24105721

*/s/ Breanta Boss*
BREANTA BOSS,
Texas Bar No. 24115768

*/s/ Scott H. Palmer*
SCOTT H. PALMER,
Texas Bar No. 00797196

PALMER PERLSTEIN
15455 Dallas Parkway, Suite 540
Addison, Texas 75001
Telephone: 214.987.4100
Facsimile: 214.922.9900
james@palmerperlstein.com
breanta@palmerperlstein.com
scott@palmerperlstein.com

**COUNSEL FOR PLAINTIFF**